# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **EDWARD NEWMAN JR.,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**ABSTRAKT MARKETING GROUP, LLC**, a Missouri company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Edward Newman Jr. ("Plaintiff Newman" or "Newman") brings this Class Action Complaint and Demand for Jury Trial against Defendant Abstrakt Marketing Group, LLC ("Defendant Abstrakt Marketing Group") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited pre-recorded calls without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Newman, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Newman is a resident of Devine, Texas.

2. Defendant Abstrakt Marketing Group is a Missouri company headquartered in St. Louis, Missouri. Defendant Abstrakt Marketing Group conducts business throughout Missouri and the U.S.

## JURISDICTION AND VENUE

3.  This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.  This Court has personal jurisdiction over the Defendant because Defendant Abstrakt Marketing Group has its headquarters in this District.

5.  Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Abstrakt Marketing Group has its headquarters in this District and the wrongful conduct giving rise to this case was directed from the Defendant from this District.

## INTRODUCTION

6.  As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020).

7.  When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.  By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.  The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

2

10. According to online robocall tracking service "YouMail," 4.7 billion robocalls were placed in November 2024 alone, at a rate of 157.6 million per day. www.robocallindex.com (last visited December 25, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Abstrakt Marketing Group provides lead generation services for businesses throughout the United States.[3]

15. Defendant Abstrakt Marketing Group places calls to businesses to solicit its lead generation services.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/abstrakt-marketing-group/about/

16. The calls that Defendant Abstrakt Marketing Group place are solicitations, as the Defendant charges businesses for its services.[4]

17. Current and former Abstrakt Marketing Group employees have posted complaints about having to place cold calls in order to generate business, including:

> fake enthusiasm. <u>The hardest part of the job is the 135 cold calls,</u> making the required amount of daily appointments and closing sales. What makes it harder is the lackluster leads, <u>you can see people have been calling them for years.</u> Then on top, it's basically just luck if you find a business in need of your service. You call and call and call but you could still run into not a single person with a issue that needs fixing. So it feels unfair when people also look into and call your leads in your pipeline. Since theres no way to gurantee you're the only one speaking to them. As well as everyone having access to the same leads. It can drive you crazy calling over and over only to get no where, yet someone can get 4 appointments in one day off sheer luck. The most enjoyable part of the job were the special events like charity work or the quarterly analysis. - **less**
>
> ✓ **Pros**
> Beer on fridays, fun atmosphere, beautiful views
>
> ✕ **Cons**
> Workload, unrealistic expectations, 135 calls, rap music can get too loud and interrupt calls, usually have to come early or stay late to finish work.[5]

---

[4] https://www.abstraktmg.com/
[5] https://www.indeed.com/cmp/Abstrakt-Marketing-Group/reviews?fcountry=US&ftext=cold+call#

4



18. In addition to placing cold calls, Abstrakt Marketing Group posted articles on its website about success in cold calling, a service that the Defendant offers as part of its lead generation services.[8]

---

[6] https://www.glassdoor.com/Reviews/Abstrakt-Marketing-Group-Reviews-E765244_P2.htm?filter.iso3Language=eng
[7] https://www.glassdoor.com/Reviews/Abstrakt-Marketing-Group-Reviews-E765244_P5.htm?filter.iso3Language=eng
[8] https://www.abstraktmg.com/cold-calling/

19.     The Defendant places unsolicited pre-recorded calls, often times to cellular phone numbers, as per Plaintiff's experience.

20.     Abstrakt Marketing Group posted an article on its website about choosing the best cold calling software. In this article, pre-recorded voicemails are suggested for sales success:

**Voicemail Drop**

Sales reps often leave the same voicemail over and over. A voicemail drop feature allows them to pre-record a message and "drop" it whenever they reach a prospect's voicemail box. This feature saves significant time and ensures that every prospect gets a clear and professional voicemail. By choosing the best cold calling software that includes voicemail drops, your team can stay productive and leave consistent, well-crafted messages without the hassle. [9]

21.     In response to these calls, Plaintiff Newman brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

### PLAINTIFF NEWMAN'S INDIVIDUAL ALLEGATIONS

22.     Plaintiff Newman is the subscriber and the sole user of a cell phone number ending with 7363.

23.     On August 8, 2024 at 4:19 PM, Plaintiff Newman received an unsolicited call to his cell phone from 314-887-1510.

24.     This call was not answered, but a pre-recorded voicemail was left stating:

"Hello, yeah, my name is Joe Rotarius. I'm looking for a general contractor. I wasn't sure if by chance you guys handle light commercial work. (unclear) a company called Abstrakt (unclear) and essentially what we do is we look for businesses that are looking to get more really (unclear) like TI's and new construction (unclear). I wasn't sure if by chance this is the type of work that you handle. But yeah, if you can give me a call back my number is 314-887-1510. That's 314-887-1510. Thank you and yeah hope you have a wonderful day. (unclear)"[10]

---

[9] https://www.abstraktmg.com/choosing-best-cold-calling-software/
[10] https://www.dropbox.com/scl/fi/4b8vz2904nrbuxrwntoq1/voicemail-1414-1.m4a?rlkey=6mw08m46wabpnfg1nrwctmrv0&dl=0

25. Plaintiff Newman believes that this voicemail was pre-recorded because it is generic, the audio quality is distorted, and because it ends unnaturally at the end.

26. The voicemail was left by Joe Rotarius, an Abstrakt Marketing Group employee:

[11]

27. When 313-887-1510 is called, it leads to the voicemail of Joe Rotarius.[12]

28. Plaintiff Newman has never provided his cell phone number to Defendant Abstrakt Marketing Group in any context or consented to be called by them. The pre-recorded voicemail that he received was unsolicited.

29. The unauthorized solicitation telephone call that Plaintiff received from or on behalf of the Defendant has harmed Plaintiff Newman in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

30. Seeking redress for these injuries, Plaintiff Newman, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

---

[11] https://www.linkedin.com/in/joe-rotarius-jr-469819149/
[12] Based on an investigation conducted by Plaintiff's attorneys

## CLASS ALLEGATIONS

31.     Plaintiff Newman brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

32.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Newman anticipates the need to amend the Class definition following appropriate discovery.

33.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

34.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

8

(a) whether Defendant placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the wilfulness of Defendant's conduct.

35. **Adequate Representation**: Plaintiff Newman will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Newman has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Newman and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Newman nor his counsel have any interest adverse to the Class.

36. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Newman. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from

Defendant' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Newman and the Pre-recorded No Consent Class)

37. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

38. The Defendant transmitted unwanted telephone calls to Plaintiff Newman and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

39. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

40. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant' conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant' actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Newman requests a jury trial.

**EDWARD NEWMAN JR.**, individually and on behalf of all others similarly situated,

DATED this 30th day of January, 2025.

*/s/ M. Cory Nelson, Esq.*
M. Cory Nelson, # 63357MO
MCN Law LLC
12433 Antioch Rd. # 25442
Overland Park, KS 66225
Email: mcorynelson@mcnlawllc.com
Tel: 913-358-5800

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*Pro Hac Vice motion forthcoming*