# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

EDWARD NEWMAN JR.,

     *Plaintiff,*

v.

ABSTRAKT MARKETING GROUP,
LLC,

     *Defendant.*

No. 4:25-cv-123 MAL

## MEMORANDUM AND ORDER

Before the Court is Defendant Abstrakt Marketing Group LLC's motion to dismiss, or to strike certain allegations from, Plaintiff Edward Newman Jr.'s amended complaint for relief under the Telephone Consumer Protection Act.  (Doc. 17).  The Court **DENIES** the motion.

### Background[1]

Abstrakt Marketing Group LLC ("Abstrakt") is a lead generation company that cold calls businesses to solicit its lead generation services.  (Doc. 16 at ¶¶ 14–17, 19.)  Cold calling is not easy, as current and former Abstrakt employees have purportedly complained.  (*Id.* at ¶ 18) (alleging that Abstrakt employees have posted that "[t]he hardest part of the job is the 135 cold calls," "Cold Calling is not an easy job for everyone," and "cold calling is a thankless job.").  To make cold calling easier, Abstrakt promotes using "voicemail drops"—a cold calling software feature that "allows [telemarketers] to pre-record a message and 'drop' it whenever they reach a prospect's voicemail box."  (*Id.* at ¶ 21.)  According to an article on Abstrakt's website, "[t]his

---

[1] On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 556, 570 (2007).

1

feature saves significant time . . ." so telemarketing "team[s] can stay productive and leave consistent, well-crafted messages without the hassle." (*Id.*)

One afternoon, Edward Newman Jr. received an unsolicited call to his cell phone that went unanswered. (Doc. 16 at ¶ 24.)  The caller left this voicemail:

> "Hello, yeah, my name is Joe Rotarius.  I'm looking for a general contractor.  I wasn't sure if by chance you guys handle light commercial work.  (unclear) a company called Abstrakt (unclear) and essentially what we do is we look for businesses that are looking to get more really (unclear) like TI's and new construction (unclear).  I wasn't sure if by chance this is the type of work that you handle.  But yeah, if you can give me a call back my number is 314-887-1510.  That's 314-887-1510.  Thank you and yeah hope you have a wonderful day.  (unclear)"

(*Id.* at ¶ 25.)  The caller, Joe Rotarius, is an Abstrakt employee.  (*Id.* at 31–32.)

"Newman believes that this voicemail was pre-recorded because it is generic, the audio quality is distorted, the voicemail tone and diction is monotone, there is no background noise or ambient sounds, and because the voicemail ends abruptly and unnaturally." (*Id.* at ¶ 29.)  Newman also alleges that, "given the generic and commercial nature of the message, it would be inefficient for [Abstrakt's] employees to leave live voicemails longer than 30 second[s] during each unanswered cold call, because it would decrease their time available to speak to consumers who live answer the cold calls." (*Id.* at ¶ 30.)

So, Newman sued Abstrakt (Doc. 1) for violating the Telephone Consumer Protection Act, which prohibits "mak[ing] any call (other than a call made for emergency purposes or made with prior express consent of the called party) using . . . an artificial or **prerecorded voice** . . . to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  Abstrakt moved to dismiss (Doc. 12), prompting Newman to file an amended complaint (Doc. 16).  Abstrakt then moved to dismiss Newman's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or alternatively, to strike certain allegations from Newman's amended complaint under Federal Rule of Civile Procedure 12(f).  (Doc. 17.)

2

## Analysis

The Court first addresses Abstrakt's motion to dismiss Newman's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Then, the Court considers Abstrakt's motion to strike certain allegations it claims are improper under Federal Rule of Civil Procedure 12(f).

### I. Motion to Dismiss

In assessing the motion to dismiss for failure to state a claim, the Court construes the amended complaint in the light most favorable to Newman and determines whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Determining what is plausible is "a context-specific task" that requires the Court "to draw on its judicial experience and common sense." *Id.*

### A. Newman plausibly alleges the voicemail was prerecorded.

The sole issue raised by Abstrakt's motion to dismiss is whether Newman has plausibly alleged that the voicemail he received was prerecorded. (Doc. 18 at 10). He has. As the complaint lays out, Abstrakt is a lead generation company that uses cold calling to generate business (as Newman experienced). (Doc. 16 at ¶¶ 14–17). But cold calling is not easy, as current and former Abstrakt employees have allegedly posted. (*Id.* at ¶ 18.) One way to make cold calling easier is to use "voicemail drops"— a marketing tool that allows users to prerecord voice messages and automatically deliver them to a recipient's inbox after a call goes unanswered. Abstrakt even extols on its website that voicemail drops are a "must-have feature" for cold calling software, explaining that: "Sales reps often leave the same voicemail over and over.[2]    A

---

[2] Available at https://www.abstraktmg.com/choosing-best-cold-calling-software/. *See* (Doc. 16 at n.9). The Court considers the contents of this webpage in deciding the motion to dismiss because it may consider materials that are "necessarily embraced by the pleadings," in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), *see Porous Media Corp. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quotation omitted), and the website is necessarily

voicemail drop feature allows them to pre-record a message and 'drop' it whenever they reach a prospect's voicemail box.  This feature saves significant time . . .. " (*Id.* at ¶ 21.)

These allegations plausibly show that the voicemail Newman received was pre-recorded.  Abstrakt is clearly in the cold calling business and asking its employees to do the hard work of making one cold call after another.  At the same time, Abstrakt promotes being able to use prerecorded voicemail drops as a "must-have feature" of cold calling software on its website because it "saves significant time." (*Id.* )  It is reasonable to infer from those facts that Abstrakt uses this "must-have feature" themselves, leaving prerecorded voicemail drops after their cold calls go unan-swered—like the call Newman received.

The content of the voicemail itself makes it even more plausible that it was prerecorded.  The voicemail Newman received appears to be a sales call.  (Doc. 16 at ¶ 25 & n.10) (detailing the content of the voicemail and including a recording of the voicemail itself which states, "I work for a company called Abstrakt in St. Louis, Mis-souri, and essentially what we do is we look for businesses that are looking to get more ughhh grow to the commercial side . . ."). If it was not prerecorded, it probably would have started off like this: "Hi Mr. Newman . . . ."  But the voicemail Newman received never greets him by name.  Instead, the voicemail generically greets its re-cipient with just "Hello," before launching into the sales pitch.  (*Id.* at ¶ 25 & n.10). That suggests the voicemail was prerecorded.  Without the recipient's specific name being mentioned, the message can be used for multiple recipients without having to waste time leaving a custom-tailored voicemail every time a sales prospect does not answer a cold call—perfect for a prerecorded voicemail drop.  Thus, when viewed in the light most favorable to Newman, the amended complaint plausibly alleges that Newman received a prerecorded voicemail.

The fact that "a real person … left the message" and that the message contains natural pauses and shifts in tone, making it "sound[] like a message left by a real,

---

embraced by Newman's complaint as it alleges the contents of the webpage and its web ad-dress.  *See* (Doc. 16 at ¶ 21, n.9).

live person" does not lead to the opposite conclusion. (Doc. 18 at 11). Real people can prerecord messages with their real voice. Nothing about a voicemail sounding like it is from a real person, or even actually being from a real person, makes it implausible that it was prerecorded.

Abstrakt's authority on this point fails to support its argument. Abstrakt cites *Metzler v. Pure Energy USA LLC,* No. 21-9798, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023), seemingly for the proposition that a recording of a voicemail at issue in a Telephone Consumer Protection Act claim must provide an indication that it was prerecorded to survive a motion to dismiss. But that is not what *Metler* held. Instead, *Metzler* held that while "a ringless voicemail could be evidence of a prerecorded message . . . standing alone, it fails to meet the requisite plausibility mark."[3] *Id.* True, the court did say in a footnote that a recording of the voicemail at issue gave no indication that it was prerecorded rather than a live person reading from a script. *Id.* at n.12. But that only mattered because there were no other factual allegations plausibly showing that the voicemail was prerecorded. *Id.* at *6 (addressing only an allegation of "a ringless voicemail . . . standing alone"). That is not the case here. Newman's allegations detailing the content and context of the voicemail plausibly show that it was prerecorded.

The rest of Abstrakt's arguments on this point also fail. For example, Abstrakt points out that Newman's own "waveform" analysis shows that the voicemail has pauses and shifts in tone (Doc. 18 at 12); notes that distorted audio quality does not necessarily infer the use of automated technology (*Id.* at 12–13); and disputes Newman's allegation that the voicemail ended unnaturally (*Id.* at 13). Even if true, these arguments do nothing to show that Newman failed to plausibly allege that he received a prerecorded voicemail. Either a distorted or an undistorted message with or without natural pauses, shifts in tone, and a natural end can be prerecorded. The same goes for Abstrakt's argument faulting Newman for not alleging that the message sounded artificial or robotic, not alleging that multiple identical messages were

---

[3] This Court takes no position on whether this holding is correct.

received, and not alleging that the caller failed to alter their tone of voice in interacting with him or that the caller was non-responsive to his questions.  (*Id.* at 13–14.) These allegations can support an inference that a message was prerecorded, but they are not necessary for such an inference.

Therefore, Abstrakt has failed to show that Newman has not plausibly alleged that he received a prerecorded voicemail.  Thus, dismissal for failure to state a claim is not warranted.  The Court will deny Abstrakt's motion to dismiss.

## II. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Rule 12(f) is "permissive" and grants the court liberal discretion when ruling on a motion to strike.  *Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

Abstrakt moves to strike Newman's allegation that "[c]urrent and former Abstrakt [] employees have posted complaints about having to place cold calls in order to generate business" as well as screenshots of (and links to) those alleged complaints. (Doc. 18 at 17 (citing Doc. 16 at ¶¶ 18–21.)  Abstrakt contends that nothing in this allegation suggests that it is liable for the voicemail that Newman received, so it is irrelevant and immaterial.  (*Id.*)  The Court disagrees.  This allegation "provides important context and background," *Stanbury*, 221 F.3d at 1063, to Newman's suit.  If true, these complaints make it more likely that Abstrakt's employee's use voicemail drops to make the difficult task of cold calling easier, which makes it more likely that the voicemail Newman received from an Abstrakt employee was prerecorded.  Thus, the Court will not use its discretion to strike this allegation.

Abstrakt also moves to strike Newman's allegations regarding articles Abstrakt has published on its website discussing cold calling and the use of prerecorded voicemail drops.  (Doc. 18 at 17) (moving to strike ¶¶ 19, 21 & n.9 from Newman's amended complaint).  But these allegations also "provide important context and background," *Stanbury*, 221 F.3d at 1063, to Newman's suit.  The fact that Abstrakt publicly promotes its success in cold calling, and publicly promotes voicemail drops as a

"must-have feature"[4] of cold calling software, makes it more likely that the voicemail Newman received was a prerecorded voicemail drop used in one of Abstrakt's cold calling campaigns.  The Court will not use its discretion to strike these allegations.

Therefore, this Court denies Abstrakt's motion to strike allegations under Federal Rule of Civil Procedure 12(f).

**Conclusion**

For the foregoing reasons, Abstrakt Marketing Group LLC's motion to dismiss and/or strike certain allegations (Doc. 17) is **DENIED.**

**SO ORDERED,**

This 27th day of April, 2026.

_Maria A. Lanahan_
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

---

[4] Available at https://www.abstraktmg.com/choosing-best-cold-calling-software/.  *See* (Doc. 16 at n.9).